

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2009

# Taylor v. Union Security Ins C

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3692

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Taylor v. Union Security Ins C" (2009). *2009 Decisions*. Paper 1289.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1289

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-3692

C. RICHTER TAYLOR, Jr.,
                                        Appellant

v.

UNION SECURITY INSURANCE COMPANY,
f/k/a FORTIS BENEFITS INSURANCE COMPANY;
TITUS & MCCONOMY LONG TERM
DISABILITY BENEFITS PLAN

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-cv-00528)
District Judge:  Honorable David Stewart Cercone

Submitted Under Third Circuit LAR 34.1(a)
May 21, 2009

Before:   FUENTES, JORDAN and NYGAARD, *Circuit Judges*.

(Filed: May 28, 2009)

OPINION OF THE COURT

JORDAN, *Circuit Judge*.

C. Richter Taylor, Jr. filed suit against Fortis Benefits Insurance Company[1] ("Fortis") and the Titus & McConomy Long Term Disability Benefits Plan (the "Plan"), alleging that they wrongfully denied him long-term disability benefits. The United States District Court for the Western District of Pennsylvania granted summary judgment to the Defendants, and Taylor has appealed. Because the District Court correctly determined that Fortis did not abuse its discretion in denying Taylor's benefits claim, we will affirm.

## I.    Background

Taylor was a partner in the Pittsburgh law firm of Titus & McConomy ("Titus") from 1989 to November of 1995, when he was asked to withdraw from the partnership. While at Titus, he enrolled in the Plan and received long-term disability coverage under it until November 30, 1995. Fortis both insured the Plan and had discretionary authority to make determinations regarding the payment of benefits under the Plan. After being terminated by Titus, Taylor joined the law firm of Houston Harbaugh, where he was of counsel until he was terminated in 1999. He then joined Plummer, Harty & Owsianyn ("Plummer") from 1999 to 2001. While working for Plumber, he suffered a manic episode and was prescribed medication to treat his symptoms. Notwithstanding the medication, his job performance continued to deteriorate, and he was fired in 2001.

---

[1]Fortis is now known as Union Security Insurance Company.

On May 29, 2002, Taylor suffered a severe manic episode and was admitted to Western Psychiatric Institute and Clinic ("WPIC"). During his inpatient stay at WPIC, Taylor was formally diagnosed with bipolar disorder, dysfunction of the frontal lobe of his brain, and sleep apnea. Taylor also began receiving treatment from Dr. Mark D. Miller, an Associate Professor of Psychiatry at the University of Pittsburgh Medical Center.

On February 15, 2003, Taylor filed a claim with Fortis for long-term disability benefits, claiming that he had been disabled due to bipolar disorder and frontal lobe dementia since November 30, 1995. Fortis denied Taylor's claim on April 22, 2003, explaining that his late notice prejudiced its ability to evaluate the claim and that he was not disabled under the terms of the Plan. Taylor followed the procedures set forth in the Plan and administratively appealed Fortis's decision.

With that appeal, Taylor submitted a report from Dr. Miller supporting his claim. Dr. Miller based his report on his own observations and phone conversations he had had with individuals who had worked with Taylor at Titus and at Houston Harbaugh. He also spoke with Dr. Scott, a psychologist, and Dr. Lobl, a psychiatrist, both of whom had previously treated Taylor.

Dr. Miller was not, however, able to review medical records dating back to the relevant time period because such records were unavailable. Taylor had been treated by three doctors during the years leading up to and directly following his termination from Titus in November 1995. Dr. Savisky, who treated Taylor in 1994, and Dr. Golding, who

treated Taylor beginning in 1995, are both deceased and their records were unavailable. And Dr. Scott, who began seeing Taylor in 1995, did not have notes on her treatment of patients prior to 1997. Despite the absence of relevant medical records, Dr. Miller stated a conclusion regarding whether Taylor's bipolar disorder affected his ability to work dating back to 1995: "Mr. Taylor's history is entirely consistent with [bipolar illness] and is highly suggestive of the bipolar illness symptomatology interfering with his ability to work dating back to 2000 with certainty and to 1995 with reasonable medical certainty." (App. F at 5.)

Fortis arranged for Dr. Stephan Kruszewski, a psychiatrist, to peer review Dr. Miller's report. After reviewing the relevant materials, Kruszewski "concluded that the records don't support that bipolar disorder was present in 1995 such as to preclude working as an attorney." (App. K at 4.) Patricia Neubauer, Ph.D., a Staff Psychologist at Fortis, further analyzed Taylor's available medical history, Dr. Miller's report, and Dr. Kruszewski's peer review of Dr. Miller's report and found that there was insufficient evidence to conclude that Taylor was disabled in November 1995. "Based on the full review of the file and all submitted records including the peer review, there is no support that Mr. Taylor had a mood disorder, whether based on depression or bipolar disorder with primary depressed presentation, that would preclude working as an attorney on 11/30/95 and persisting through a qualifying period." (*Id.*)

After reviewing the opinions expressed by Dr. Neubauer and Dr. Kruszewski, Dr. Miller issued an additional report reconfirming his previous opinion but

4

acknowledging the difficulty of retrospectively determining when Taylor became disabled: "When one looks backwards and takes into account the gross irregularities at work and the progressive decline in function over time, it is reasonable, in my view, to conclude that this illness was likely operating earlier during the time of his work as a lawyer. Where one draws the line to invoke a disability claim, I appreciate is a difficult decision." (App. H at 3.)

In reviews dated January 18, 2005 and September 18, 2005, Fortis upheld its decision to deny Taylor's benefits claim. Fortis maintained its position that Taylor had not shown that he was disabled under the terms of the Plan and that it had been prejudiced by the late submission of Taylor's claim.

After exhausting the Plan appeal procedures, Taylor filed a denial of benefits suit against Fortis pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 101, et. seq. The parties filed cross motions for summary judgment and a Magistrate Judge recommended that the District Court grant summary judgment to Fortis. The District Court adopted the Magistrate Judge's Report and Recommendation after determining that, even if it looked beyond the prejudice created by the untimeliness of Taylor's claim, Fortis had ample reason to conclude that Taylor was not disabled in November 1995 and, therefore, that Fortis had not abused its discretion in denying his claim. Taylor then filed this appeal, arguing that the District Court erred by granting summary judgment to Fortis.

## II.    Discussion[2]

We exercise plenary review of the District Court's decision to grant summary judgment. *Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 194 (3d Cir. 2002). Accordingly, we review Fortis's decision to deny benefits under the same standard applied by the District Court. *Id.* In *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that an ERISA plan administrator's decision to deny benefits is subject to *de novo* review unless the plan at issue "gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan." When, as in this case, a plan grants its administrator discretionary authority to determine eligibility for benefits, we review the denial of benefits under an arbitrary and capricious standard.[3] *Post v. Hartford Ins. Co.*, 501 F.3d 154, 161 (3d Cir. 2007); *Smathers*, 298 F.3d at 194-95.

---

[2]The District Court had jurisdiction to hear this case under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). We have appellate jurisdiction to review the District Court's final decision pursuant to 28 U.S.C. § 1291.

[3]In *Firestone,* the Supreme Court instructed that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 489 U.S. at 115. The Supreme Court recently clarified this instruction in *Metropolitan Life Ins. Co. v. Glenn,* --- U.S. ----, 128 S.Ct. 2343, 2350 (2008), in which it explained that a plan administrator's potential conflict of interest does not make more stringent the arbitrary and capricious standard of review but rather serves as one of several factors that courts should consider in applying that standard. Although the Magistrate Judge and the District Court applied a heightened standard of review, in keeping with our pre-*Glenn* case law, that actually works in Fortis's favor at this juncture, since the conclusion that Fortis's decision passed muster under the heightened standard means it necessarily passes under the lower arbitrary and capricious standard as well.

A plan administrator's decision is arbitrary and capricious if "it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000) (citation omitted). Under this standard, we must determine whether there was a reasonable basis for the administrator's decision, based on the facts as known by the administrator at the time the decision was made. *Smathers*, 298 F.3d at 199-200.

To qualify as disabled under the Plan, a claimant must satisfy either the Occupation Test or the Earning Test. (App. J at 1.) A claimant satisfies the Occupation Test when "an injury, sickness, or pregnancy requires that [he] be under the regular care and attendance of a doctor, and prevents [him] from performing at least one of the material duties of [his] regular occupation." (*Id.*) Under the Earnings Test, "[a claimant] may be considered disabled in any month in which [he is] actually working, if an injury, sickness, or pregnancy ... prevents [him] from earning more than 80% of [his] monthly pay in that month in any occupation for which [his] education, training or experience qualifies [him]." (*Id.*)

Based on the record, Fortis concluded that Taylor did not provide sufficient evidence that he was disabled, as of November 30, 1995, under the terms of the Plan. He did not meet the Occupation Test because there was insufficient evidence that, by November 30, 1995, Taylor's condition prevented him from performing any of the material duties of his occupation as a lawyer. He was employed as a lawyer for several

7

years after 1995, and Fortis could properly look to that as evidence that he did not meet the Occupation test. Moreover, Taylor himself had identified on a February 2003 claim form that he became disabled "two years ago," i.e., sometime in 2001, not in 1995. (*See* Supp. App. at 45.)

Taylor also failed to meet the Earnings Test because there was insufficient evidence that, by November 30, 1995, his condition prevented him from making 80% of his earlier monthly pay. While Taylor asserts that he made less than 80% of what he had earned while he was a partner or shareholder in successful law firms – an assertion that Fortis notes is unsupported by record evidence – it was not arbitrary or capricious for Fortis to conclude that Taylor did not demonstrate that his reduced earnings were due to his mental illness. Untangling the causes of Taylor's career decline is not the simple matter that Taylor now declares it to be. On the contrary, evidence in the record shows that Taylor had serious problems in his life aside from the mental and emotional challenges he faced. His wife was terminally ill, which he acknowledges was a terrible burden, and Dr. Kruszewski indicated that alcohol and medication were also factors in Taylor's deterioration. We do not intend by these observations to minimize the impact of mental illness in Taylor's life, nor to imply that stressors and self-destructive behaviors can be neatly separated from his mental state. Rather, we conclude simply that, under the arbitrary and capricious standard we are bound to apply, and on this record, we cannot

8

overturn Fortis's conclusion that Taylor failed to demonstrate that his income loss was due to mental illness.[4]

In short, Fortis's decision to deny Taylor's claim for benefits is adequately supported by the record. Dr. Kruszewski and Dr. Neubauer both opined that the record was insufficient to conclude that Taylor was disabled by November 30, 1995 under the terms of the Plan. Even Dr. Miller acknowledged that, given the retrospective nature of Taylor's claim, it was difficult to determine exactly when Taylor became disabled under the terms of the Plan. (App. H at 3.) Fortis thus did not abuse its discretion in denying Taylor's claim for long-term disability benefits.

Because we have determined that Fortis's decision to deny benefits was not arbitrary or capricious, we need not determine whether it was prejudiced by the delay between the alleged onset of Taylor's disability and the filing of his claim.

## III.    Conclusion

As the District Court correctly concluded that Fortis did not abuse its discretion in denying Taylor's claim for long-term disability benefits, we will affirm.

---

[4]We also agree with Fortis that the lack of any medical records during the ninety days following the claimed November 30, 1995 disability onset date were appropriately considered in deciding whether Taylor had adequately supported his disability claim. That ninety-day period, called the "qualifying period" in the Plan insurance policy, is set by the policy as a time during which disability must demonstrably exist in order to qualify for benefits. (*See* Supp. App. at 16.)